

The following constitutes the Memorandum Decision of the Court.  Signed: November 30, 2018

_____

Roger L. Efremsky
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| In re | ) | |
| MARLON J. AVILES and NELLI MARKUSHEVSKA, | ) ) ) | Case No. 15-43510-RLE Chapter 13 |
| Debtors. | ) ) | |
| _____ | ) | |
| ALLURE LABS, INC., | ) ) | Adv. Pro. No. 16-4010-RLE |
| Plaintiff, | ) ) | |
| v. | ) | |
| MARLON J. AVILES and NELLI MARKUSHEVSKA, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**MEMORANDUM DECISION AFTER TRIAL**

-1-

## I. INTRODUCTION

In 2014, defendant Nelli Markushevska was employed as a bookkeeper at plaintiff Allure Labs, Inc. ("Allure"). While she was employed there, she embezzled $137,000 (the "Embezzlement"). When Allure discovered this, it sued her and her husband Marlon J. Aviles (collectively, with Nelli Markushevska, "Defendants") in state court and obtained an order freezing some $67,000 held in bank accounts in their names. While the state court case was still essentially in its pleading stage, Defendants filed this chapter 13 case. They have filed a chapter 13 plan through which they propose to repay Allure. Allure has objected to the confirmation of this plan on the ground that it is proposed in bad faith because it does not adequately repay the amount Allure believes it is owed. Confirmation of the plan has been postponed due to Allure's objection and this Adversary Proceeding.

In 2016, Allure filed its complaint seeking a determination that the debt of roughly $137,059 arising from the Embezzlement, trebled under the provisions of California Penal Code §496(c), plus attorney's fees and costs, is not dischargeable. While the complaint ostensibly states claims based on Bankruptcy Code §§523(a)(2), (a)(4), and (a)(6), its allegations are a blend of statements that reflect an imprecise understanding of these different Bankruptcy Code sections.

Prior to trial, Ms. Markushevska stipulated that the $137,059 she embezzled from Allure is a nondischargeable debt under Bankruptcy Code §523(a)(4). Therefore, the issues to be decided are whether the debt owed to Allure is nondischargeable as to Ms. Markushevska under §523(a)(2) or (a)(6); whether it is nondischargeable as to Mr. Aviles; and whether the debt includes treble damages, attorneys fees, and costs based on California Penal Code §496(c).

The court held a one-day trial on August 15, 2018. The court made several pretrial rulings on the record which are incorporated herein by this reference. The parties also entered a stipulation regarding certain facts and the admissibility of certain exhibits. As appropriate, the court also takes judicial notice of the docket in this adversary proceeding and in the underlying chapter 13 case.

The court has heard and considered the testimony of Allure's witness and the testimony of both Defendants. It has considered the documents admitted into evidence and the post-trial briefs it requested on the California Penal Code §496 issues. These are the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a) made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.

For the reasons explained below, the court finds that Allure's debt is dischargeable as to Mr. Aviles and nondischargeable as conversion under §523(a)(6) as to Ms. Markushevska. Allure's nondischargeable debt includes prejudgment interest at the California rate of 10% and the $11,000 it expended to reconstruct its books and records when it discovered the Embezzlement. The court also finds that California Penal Code §496(c) does not apply and Allure is therefore not entitled to treble damages, attorney's fees, and costs.

## II. JURISDICTION AND VENUE

This court has jurisdiction based on 28 U.S.C. §1334. This is a core proceeding that this court may hear and determine. 28 U.S.C. §§157(b)(2)(A), (I), (J), and (O). Venue is proper under 28 U.S.C. §1409.

## III. BACKGROUND

### A. Pre-Petition Events

After it discovered the Embezzlement, Allure sued Defendants in state court and obtained a temporary restraining order freezing the funds in Defendants' Technology Credit Union accounts. A preliminary injunction hearing was set for October 2015 and Defendants claim they notified Allure they had no opposition to issuance of the injunction. Approximately $67,000 remains frozen in these accounts. Defendants' state court counsel made multiple settlement offers to Allure in September and October 2015, all of which were rejected.

### B. Post-Petition Events

Defendants filed their chapter 13 case on November 14, 2015. Their schedules listed their principal residence valued at $462,000, and personal property valued at approximately

-3-

$134,000.[1] They also listed secured claims of $274,000, and unsecured claims of $152,000. Their combined monthly income was $8,505[2] and their monthly household expenses were $5,621. Defendants filed their first amended chapter 13 plan on December 11, 2015. The plan provides for monthly payments of $2,876 for 60 months. The plan proposes direct monthly payments of the contract amounts totaling approximately $2,245 on the non-delinquent secured claims of Technology Credit Union for the deed of trust on their house and a 2012 Toyota Camry. The plan also states that Defendants will pay 100% of the unsecured claims that total approximately $152,364. The bulk of this is the principal amount of the debt owed to Allure.

Allure filed a timely objection to confirmation of the plan. Allure claimed, *inter alia*, that the chapter 13 case had been filed in bad faith to thwart its efforts to collect and to discharge its nondischargeable debt. A confirmation hearing was set for February 25, 2016.

Allure also filed a proof of claim stating it was owed at least $524,552 based on the allegations in its state court complaint. Claim No. 5.[3] Aside from Allure's claim, the claims register shows two unsecured claims totaling approximately $6,600 and the two secured claims of Technology Credit Union. Accordingly, this case is essentially a two-party dispute.[4]

Allure timely filed its complaint commencing this adversary proceeding. The complaint states a claim for relief under Bankruptcy Code §523(a)(2)(A), alleging that Ms. Markushevska

---

[1] The scheduled personal property included $67,000 in the frozen bank accounts and $21,000 in exempt retirement accounts.

[2] The scheduled income was from their employment plus monthly contributions of $2,000 from an adult son and daughter.

[3] Allure's calculations were as follows: treble damages of $411,000, attorney's fees of at least $100,000, plus prejudgment interest of at least $13,552.

[4] According to Defendants' Trial Brief, they had made plan payments of $92,032 to the chapter 13 trustee and the trustee held approximately $85,857 of which $82,000 would be paid to Allure following confirmation of the plan. Defendants also proposed to sell the BMW purchased with embezzled funds from which they thought they would net $15,000. They estimated that the total available to pay Allure upon confirmation of the plan, sale of the BMW, and release of the frozen funds would be approximately $162,000. AP Docket No. 41.

-4-

made false representations to Allure in creating and cashing the fraudulent checks and Allure relied on these representations.  It also states a claim for relief under Bankruptcy Code §523(a)(4), alleging Ms. Markushevska committed fraud and defalcation as a fiduciary and embezzlement with Mr. Aviles acting in concert with her, plus larceny and receiving stolen property.  The third claim for relief alleges that Allure's damages arise from Defendants' fraudulent acts causing willful and malicious injury under Bankruptcy Code §523(a)(6). Defendants filed an answer generally denying these allegations.

Allure filed a motion for relief from stay in order to obtain permission to continue its state court litigation.  The motion was granted in March 2016; at that point, confirmation of the plan was taken off calendar, and this adversary proceeding was stayed.  (In state court, Allure then filed its first amended complaint adding the cause of action predicated on California Penal Code §496(a).)

Six months later, Allure informed this court that no progress had been made in state court.  In response, this court vacated the order granting relief from stay and vacated the order staying the adversary proceeding.  After a failed attempt at mediation, the case was finally set for trial.

**C. Testimony at Trial**

Renu Dhatt, vice president of Allure, testified as to how the Embezzlement was actually accomplished.  Between August 2014 and August 2015, Ms. Markushevska created false invoices, entered them into QuickBooks, then wrote checks showing "M. Aviles" as the payee of the checks rather than the entity on the false invoices entered into QuickBooks.  Using this technique, 63 checks - each in an amount of less than $3,000 - were made payable to "M. Aviles" and deposited by Ms. Markushevska into a checking account at Technology Credit Union in the names of both Nelli Markushevska and Marlon Aviles (the "Joint Account"). Exhibit 44.  Ms. Dhatt testified, and the documentary evidence shows, that the funds were then moved, almost immediately after being deposited into the Joint Account, into an account at Technology Credit Union in Ms. Markushevska's name only (the "Markushevska Separate Account").  Exhibit 46.  The documentary evidence also showed that Mr. Aviles maintained his

-5-

own separate checking account into which he deposited his paychecks and from which he periodically transferred funds to the Joint Account (the "Aviles Separate Account"). Exhibit 48.

Ms. Dhatt testified that the Embezzlement was discovered when Ms. Markushevska went on vacation and another employee began to inspect Allure's books. From this point, several employees spent a considerable amount of time reconstructing what had actually occurred which she estimated took three weeks for three employees working full time with some additional overtime. She testified that these employees were regularly paid $30-$35 per hour with an increase to $45-$52 for overtime. She did not give a total cost for this effort but her counsel stated it was at least $11,000.

The Technology Credit Union records show that between August 2014 and August 2015, Defendants (1) spent approximately $9,000 on home improvements (some of these funds taken from the Markushevska Separate Account); (2) used approximately $23,000 to pay off the loan on one car, purchase a used BMW and for other car related expenses (some of these funds taken from the Markushevska Separate Account); and (3) withdrew approximately $13,500 in cash from the Joint Account and the Markushevska Separate Account. It is unclear how the balance of the $137,000 was used. The Technology Credit Union records also show that roughly $127,000 of the money taken from Allure was deposited into the Joint Account and roughly $110,000 of this was transferred to the Markushevska Separate Account shortly after each check cleared the Joint Account.

Mr. Aviles testified that he had no knowledge regarding the Embezzlement while it was taking place and that the signature that appears on the back of each of the checks was not his.[5] He claimed that he did not use the Joint Account other than to electronically transfer money to it for paying a child's school tuition and other minor household expenses. While he testified that he did this on a monthly basis, Exhibits 44 and 48 do not show this to have been the case. For

---

[5] The signature on the fraudulent checks is substantially different than the signature on the checks Mr. Aviles deposited into the Aviles Separate Account. This supports Defendants' version of events that Ms. Markushevska deposited the fraudulent checks into the Joint Account and the "M. Aviles" signature on them was created by her.

-6-

1   example, he transferred no money from the Aviles Separate Account to the Joint Account in

2   June, July, or September 2014 and none between February and July 2015.  He claimed he did not

3   review any monthly statements for the Joint Account - either on paper or online - and did not

4   have a debit card for the Joint Account.  His paychecks were not deposited into the Joint

5   Account but went into the Aviles Separate Account which he also used for various household

6   expenses.

7   Mr. Aviles also testified that Ms. Markushevska had told him that Allure had loaned her

8   the money to pay off their existing car loan and purchase the used BMW in June 2015.  He

9   explained that he did not find this unusual as his employer had programs to provide such

10  financial assistance to its employees.  Once he learned that she had embezzled funds from Allure

11  and that these had been used to purchase the BMW, he had insisted that it remain parked in their

12  garage and it had been driven only once a month to ensure that the battery remained charged to

13  avoid damaging the car's computer system.

14  Ms. Markushevska was also called as a witness but essentially did not testify. Her

15  counsel attempted to ask a question regarding Exhibit 51, the check written to Acura of Concord

16  on the Markushevska Separate Account which was used to purchase the BMW.  Allure's counsel

17  objected on the ground that she had refused to answer discovery requests based on her Fifth

18  Amendment rights.  Colloquy between the court and counsel for both parties ensued and she was

19  then excused.

20  **IV. DISCUSSION**

21      **A.  Burden of Proof**

22      A plaintiff in a nondischargeability case has the burden of proof by a preponderance of

23  the evidence.  <u>Grogan v. Garner</u>, 498 U.S. 279, 291 (1991).  The preponderance of the evidence

24  requires the court to believe the existence of a fact is more probable than its nonexistence before

25  it may find in favor of the party with the burden to persuade the court of the fact's existence.

26  <u>Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S.Cal</u>., 508 U.S. 602,

27  622 (1993).

28      Because Ms. Markushevska has stipulated that the Allure debt - in an amount to be

-7-

determined - is nondischargeable as to her as embezzlement under Bankruptcy Code §523(a)(4), Allure has the burden of proof by a preponderance of the evidence that Mr. Aviles is either vicariously liable under partnership/agency principles or that he is liable because he had a direct role in the Embezzlement.  See La Trattoria, Inc. v. Lansford (In re Lansford), 822 F.2d 902, 904-05 (9th Cir. 1987) (evidence showed debtor wife participated in creating fraudulent financial statement on which creditor relied, debt was therefore nondischargeable as to both spouses under §523(a)(2)(B)); Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa), 287 B.R. 515, 526-27 (9th Cir. BAP 2002) (in §523(a)(2)(A) action, fraud of one spouse may be imputed to other spouse under agency principles when evidence shows they are also business partners); Haig v. Shart (In re Shart), 2014 WL 6480307 (9th Cir. BAP 2014) (in §523(a)(2)(A) action, debt dischargeable as to debtor wife where she was not vicariously liable for husband's fraud as his business partner and was not directly liable because evidence did not show she knew or should have known of his fraud).

As to each of the Defendants, Allure also has the burden of proof regarding the facts supporting the application of Penal Code §496(c) by a preponderance of the evidence. Defendants are incorrect that a higher standard of proof is required for liability under Penal Code §496(c).

**B.  Embezzlement and Larceny - Bankruptcy Code §523(a)(4)**

Bankruptcy Code §523(a)(4) excepts from an individual debtor's discharge debts arising from embezzlement or larceny.  For purposes of §523(a)(4), federal law, as opposed to state law, governs the definition of embezzlement.  First Delaware Life Ins. Co. v. Wada (In re Wada), 210 B.R. 572, 576-77 (9th Cir. BAP 1997).  The elements are (1) property owned by another is rightfully in the possession of debtor; (2) debtor appropriates it for a use other than the use for which the property was entrusted to debtor; and (3) circumstances indicate fraud.  Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton), 942 F.2d 551, 555 (9th Cir. 1991).

Larceny is similar to embezzlement.  Its elements are (1) the fraudulent and wrongful taking and carrying away of the property of another; (2) with the intent to convert it to the taker's use; and (3) without the consent of the owner.  The difference between larceny and

-8-

embezzlement is that the larcenous debtor takes possession unlawfully. Lucero v. Montes (In re Montes), 177 B.R. 325, 331 (Bankr. C.D. Cal. 1994).

Because Ms. Markushevska has stipulated that the Embezzlement constitutes a nondischargeable debt under §523(a)(4), the definition of larceny is relevant as to Mr. Aviles. Based on his testimony at trial and the documentary evidence, the court finds Allure did not prove by a preponderance of the evidence that Mr. Aviles committed larceny. He credibly testified that he did not know Ms. Markushevska was stealing and that he did not use the Joint Account in a way that would have shown him the influx of cash, her transfers to the Markushevska Separate Account, or her withdrawals of significant amounts of cash.

**C.  Conversion - Bankruptcy Code §523(a)(6)**

Allure's complaint includes a vague claim based §523(a)(6) as to both Defendants. In a total of three paragraphs, Allure alleges Defendants "orchestrated a fraudulent scheme" and engaged in "a pattern of outrageous conduct" and the damages Allure suffered arose from "fraudulent acts causing willful and malicious injury." Allure did not develop this claim at trial. However, the court believes it warrants a brief discussion.

Section 523(a)(6) excepts from discharge debts for "willful and malicious injury by the debtor to another entity or to the property of another entity." Conversion, as defined by state law,[6] is not _per se_ a willful and malicious injury but it may be covered by §523(a)(6). Peklar v. Ikerd (In re Peklar), 260 F.3d 1035, 1037 (9th Cir. 2001). See Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1206 (9th Cir. 2001) (for liability under §523(a)(6), plaintiff must prove debtor acted willfully and inflicted injury willfully and maliciously rather than recklessly or negligently); Del Bino v. Bailey (In re Bailey), 197 F.3d 997, 1000 (9th Cir. 1999) (conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, constitutes a willful and malicious injury for §523(a)(6)).

---

[6] California defines the tort of conversion as the wrongful exercise of dominion over the property of another. Gruber v. Pacific States Sav. & Loan Co., 13 Cal. 2d 144, 148 (1939).

-9-

On the facts established at trial, the court finds that Ms. Markushevska's conversion fits within the definitions of §523(a)(6) as causing willful and malicious injury.  Accordingly, Ms. Markushevska's debt to Allure is nondischargeable under §523(a)(6) based on the same underlying facts that support her liability for the Embezzlement.  See Carillo v. Su (In re Su), 290 F.3d 1140, 1146-47 (9th Cir. 2002) (relying on Kawaauhau v. Geiger, 523 U.S. 57 (1998); willful injury is governed by a subjective standard); Jercich, 238 F.3d at 1209 (wilful injury requires a subjective intent to harm or a subjective belief that harm is substantially certain; malicious injury involves a wrongful act, done intentionally which necessarily causes injury and is done without just cause or excuse).

Under California law, the damages for conversion are presumed to be (1) the value of the property at the time of the conversion with interest from that time, or an amount sufficient to indemnify the injured party for the loss which is the proximate result of the wrongful act; and (2) a fair compensation for the time and money properly expended in pursuit of recovering the property.  Cal. Civ. Code §3336; see also Virtanen v. O'Connell, 140 Cal.App.4th 688, 708 (2006) (discussing the "normal measure of damages for conversion" in Civil Code §3336).

Punitive damages may also be awarded for conversion when it meets the criteria for nondischargeability under §523(a)(6).  Allure did not ask for punitive damages in its §523(a)(6) claim, ostensibly relying on its request for treble damages under Penal Code §496(c) instead.  Treble damages are a form of punitive damages.  Cohen v. de la Cruz, 523 U.S. at 216.  However, there are significant differences in the burden of proof and the relevant evidence needed to establish a right to an award of punitive damages.[7]  The court will not undertake what was Allure's task in this context and deems any argument regarding punitive damages, as distinct from treble damages, to be waived.  United States v. Lara, 815 F.3d 605, 613 (9th Cir. 2016) (argument not made in trial court is not preserved on appeal).

As provided by Civil Code §3336, and discussed further below, Allure's conversion

---

[7] Punitive damages require clear and convincing evidence of "oppression, fraud or malice."  Cal.Civ.Code §3294(a).  See Adams v. Murakami, 54 Cal.3d 105 (1991).

-10-

damages are: (1) the $137,059 Embezzlement; (2) the $11,000 cost incurred in establishing the

Embezzlement; and (3) prejudgment interest as discussed below.[8]

### D. Liability for Treble Damages - California Penal Code §496(c)

California Penal Code §496 provides in relevant part -

(a) Every person who buys or *receives any property that has been stolen* or that has been obtained in any manner constituting theft ... *knowing the property to be so stolen* ... or who conceals, sells, withholds*, or aids in* concealing, selling or *withholding* any property from the owner, *knowing the property to be so stolen* ... shall be punished by imprisonment in a county jail for not more than one year ....

(c) Any person who has been injured by a violation of subsection (a) may bring an action for *three times* the amount of *actual damages*, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees.

California Penal Code §496 (emphasis added).

Theft is defined broadly in California to include fraudulently appropriating property, and

acquiring property by any false or fraudulent representation or pretense. Penal Code §484. To

prove theft, a plaintiff must establish defendant had a specific felonious intent to permanently

deprive the owner of the property, or to temporarily deprive the owner of it for an unreasonable

time. People v. Avery, 27 Cal. 4th 49, 58 (2002). A defendant may defeat this specific felonious

intent by showing a good faith claim of a right to possession. People v. Davis, 19 Cal. 4th 301,

305 (1998).

The offense of receiving stolen property under Penal Code §496 requires proof that: (1)

the property was stolen; (2) defendant was in possession of it; and (3) defendant knew that it was

stolen. See Verdugo-Gonzalez v. Holder, 581 F.3d 1059, 1061 (9th Cir. 2009) (citing People v.

Anderson, 210 Cal.App. 3d 414, 420 (1989) and explaining that the act of buying or receiving

stolen property knowing that it was stolen entails an exercise of control over the property

without consent and with intent to deprive the owner of rights and benefits of ownership); People

v. Roder, 33 Cal. 3d 491 (1983) (discussing permissible inference applicable to second hand

dealers regarding knowledge that property is stolen). Penal Code §496 also covers someone who

---

[8] Allure's complaint included a claim for relief based on Bankruptcy Code §523(a)(2)(A). Allure did not develop this claim at trial and has waived it.

-11-

aids in concealing or withholding stolen property knowing it was stolen.  See Gonzalez v. Duenas-Alvarez, 549 U.S. 183, 190 (2007) (generic definition of theft includes the crime of aiding and abetting a theft offense).

Penal Code §496 was amended in relevant part in 1972.  As explained in Citizens of Humanity, LLC v. Costco Wholesale Corp., 171 Cal. App. 4th 1 (2009) -

> Prior to the amendment, the statute did not apply to those who sold stolen property; it applied only to those who purchased, received, withheld or concealed it. Nor did it include the language currently found in subdivision (c), which permits any party injured by a violation of subdivision (a) to bring a civil action for damages. This language was added by Statutes 1972, chapter 963, section 1, pages 1739–1740. It was the result of Senate Bill No. 1068 (1972 Reg. Sess.). The bill was introduced at the request of the California Trucking Association, with the goal of *eliminating markets for stolen property, in order to substantially reduce the incentive to hijack cargo from common carriers*. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1068 (1972 Reg. Sess.) as amended June 26, 1972.) Yet while an early version of the bill limited the plaintiffs who may bring civil actions to public carriers injured by the knowing purchase, receipt, concealment, or withholding of stolen property (Sen. Bill No. 1068 (1972 Reg. Sess.) as amended in Senate, May 30, 1972), the bill is subsequently amended to expand the class of potential plaintiffs to include "[a]ny person who has been injured by" the knowing purchase, receipt, concealment or withholding of stolen property. (Sen. Amend. to Sen. Bill No. 1068 (1972 Reg. Sess.) June 26, 1972.).

Citizens of Humanity, 171 Cal.App. 4th at 17-18 (emphasis added).

Penal Code §496 was amended again in 1992 to add the following two sentences:

> A principal in the actual theft of the property may be convicted pursuant to this section. However, no person may be convicted both pursuant to this section and of the theft of the same property.

Stats. 1992, ch. 1146, 1, p. 5374.[9]

Allure contends Penal Code §496(c) applies to both Defendants.  First, Allure argues that it applies to Ms. Markushevska because §496(a) provides that "a principal in the actual theft of the property may be convicted pursuant to this section."[10]  In response, Defendants argue that Ms. Markushevska admittedly committed the Embezzlement but then took no actions that were divorced from that actual theft.  Defendants cite People v. Wheeldin, 276 Cal.App.2d 744 (1969)

---

[9] See People v. Allen, 21 Cal.4th 846 (1999) (explaining the intent of these two sentences added in 1992).

[10] By definition, a "principal" includes any person concerned in the commission of a crime. Penal Code §31.

-12-

as support for the proposition that this precludes application of Penal Code §496(c) to Ms. Markushevska. This argument misses the mark. The California Supreme Court explained that the 1992 amendment to §496 abrogated this notion that there had to be a "complete divorcement" between the theft and the possession of stolen property before the thief may be convicted of receiving stolen property. People v. Allen, 21 Cal.4th 846, 858 (1999). And, as the second sentence added in 1992 says, the thief in fact may be convicted of receiving stolen property so long as the thief is not *also* convicted of stealing that property. People v. Ceja, 49 Cal. 4th 1, 6 (2010).

Second, Allure argues that Mr. Aviles knowingly received stolen property because (1) the stolen funds were deposited into the Joint Account; (2) he "regularly engaged" in transactions with the Joint Account; (3) over the time period of the Embezzlement, the Defendants' collective income increased by 100%; and (4) he was aware of the major expenditures made with the embezzled money. Defendants counter that Mr. Aviles credibly testified that he had no knowledge that stolen money was being deposited into the Joint Account and he had no dominion or control over the Joint Account. With only one exception, there were no transfers from the Joint Account to the Aviles Separate Account[11] and he claimed he had largely ignored the existence of the Joint Account.

There is scant case law interpreting the civil liability provision in Penal Code §496(c). In support of its claim for its application here, Allure relies primarily on Bell v. Feibush, 212 Cal.App.4th 1041 (2013) and essentially assumes the amount of its nondischargeable debt will - without question - include treble damages and attorney's fees. Allure refers to other decisions from state and federal courts involving other statutes providing for treble damages but Bell is the only case Allure cites in which a *judgment* awarding treble damages based on Penal Code

---

[11] On October 6, 2014, Mr. Aviles electronically transferred $1,000 to the Joint Account from the Aviles Separate Account but $1,000 was transferred back to the Aviles Separate Account on the same day to make a correction regarding payment of school tuition for a minor child. Exhibit 48, p. 12/41.

-13-

§496(c) was in fact entered.[12]

In Bell, plaintiff sued defendant for fraud, breach of contract and violation of Penal Code §496(a). The evidence at the default prove-up hearing showed that defendant induced plaintiff to loan him money on false pretenses and, when plaintiff asked for her money back, defendant gave her a litany of excuses and never repaid her. The trial court found that the fraud and breach of contract damages were $202,500. On the Penal Code §496 cause of action, the trial court reluctantly trebled the damages to $606,500 and awarded prejudgment interest on the breach of contract and fraud causes of action. The appellate court affirmed. Giving effect to the plain meaning of the statute's words, what it saw as the legislative intent, and the statute's purpose, the court rejected defendant's argument that a criminal conviction was a prerequisite to civil liability. The court reasoned that §496(a) says "every person" who engages in certain described conduct violates that section and the consequence of that violation is imprisonment. In addition, §496(c) says that "any person" injured by that violation may recover treble damages.

Referring to the bar on dual criminal convictions added to §496(a) in 1992, the court explained that, in the civil liability context, defendant would not be liable for damages under the breach of contract and fraud causes of action *and* treble damages under §496(c) and noted that the trial court had written "no double recovery" on the judgment. However, the evidence established that the defendant had violated §496(a) not only by obtaining money from the plaintiff by false pretenses, but also by withholding it by false pretenses when she asked for it back. Because of this, it was appropriate to award treble damages on the §496(a) cause of action.

Prior to Bell, in Citizens of Humanity, LLC v. Costco Wholesale Corp., 171 Cal.App. 4th 1, 18 (2009) the court held that plaintiff did not have to allege it was the owner of the property it claimed was stolen in order to state a viable cause of action for violation of §496(c). This is the only §496(c) treble damages case cited in Bell in a civil context. Following Bell, plaintiffs in four state court cases requested treble damages based on Penal Code §496(c). In a commercial

_____

[12] The court has not uncovered any additional helpful cases from within this circuit.

-14-

contract dispute, a real estate dispute, a car repair dispute, and an employment dispute, these courts rejected the plaintiffs' requests.  See Kayne v. Mense, 2016 WL 1178671, *5 (Cal. Ct. App. March 25, 2016) (commercial contract dispute arising in a legitimate business transaction, trial court appropriately vacated jury's award of treble damages under §496(c)); Nguyen v. Fuke, 2017 WL 2839540, *4-5 (Cal. Ct. App. July 3, 2017) (car repair dispute, court awarded economic damages, emotional distress damages, fees, costs, interest; declined to award treble damages as beyond traditional limits on remedies and applying the literal terms of §496(c) led to an unreasonable result); Younan v. Ibrahim, 2017 WL 2962800, *5 (Cal. Ct. App. July 12, 2017) (real estate dispute, court distinguished Bell, found its reasoning inapplicable to facts before it); Lacagnina v. Comprehend Systems, Inc., 25 Cal.App.5th 955 (2018) (employment compensation dispute, trial court's nonsuit on §496(c) cause of action affirmed; imposing treble damages did not advance legislative purpose of eliminating market for stolen property, adverse consequences including, impediment to settlements, would follow plaintiff's proposed interpretation; court doubted Legislature contemplated, much less intended, such consequences when it enacted §496(c)).

Plaintiffs in federal court have not faired much better.  In WorldWide Travel, Inc. v. TravelMate US, Inc., No. 16-cv-00155, 2016 WL 1241026, *6-7 (S.D. Cal. Mar. 30, 2016), the court granted plaintiff leave to amend its complaint to state a §496(c) claim based on a theft by false pretenses theory arising in a commercial contract dispute.  In GEC US 1 LLC v. Frontier Renewables, LLC, No. 16-cv-1276, 2016 WL 4677585, *9 (N.D. Cal. Sept. 7, 2016), the court also granted leave to amend a civil theft claim based on §496(c) in a commercial breach of contract action.  The court explained that the allegations of the complaint showed a dispute over ownership rather than specific intent to steal.  "Without more, allowing this claim to proceed on these allegations would sanction the use of the penal code to redress ordinary business disputes over ownership interests - an untenable result."  Id.

On the other hand, in Grouse River Outfitters Ltd. v. NetSuite, Inc., No. 16-cv-02954, 2016 WL 5930273, *14-15 (N.D. Cal. Oct. 12, 2016), the court granted a motion to dismiss a §496(c) claim without leave to amend in a case involving a commercial contract dispute.  The

-15-

court reasoned that the property - Grouse River's money - was not "stolen" when NetSuite allegedly defrauded Grouse River of it. Id. Thus, while it could be said that NetSuite committed theft by false pretenses, it could not be said that NetSuite thereby "received" stolen property in violation of §496(c). Id. The court discussed Bell and WorldwideTravel in connection with the question of dual civil liability raised by the two sentences added to §496 in 1992 that a principal in the theft may be convicted pursuant to this section but that no person may be convicted *both* pursuant to this section and of the theft of the same property. Id. Plaintiff Grouse River argued that WorldwideTravel had permitted dual civil liability because it allowed a §496(c) claim to be pled premised solely on civil fraud, ostensibly relying on Bell. Id. In response, the court pointed out that the apparently decisive ground for permitting a §496(c) claim in Bell was that defendant had engaged in "additional conduct" beyond the underlying theft and that "small additional conduct" was enough to avoid the dual-liability bar. Id. Grouse River did not allege that it had asked for its property back and NetSuite had refused to return it, it alleged only the "primary underlying fraud." Id. The court concluded that Grouse River could not leverage that alleged fraud into a damages-trebling §496(a) violation. Id.

In Agape Family Worship Center, Inc. v. Gridiron, No. 15-cv-1465, 2018 WL 2540274, *5-6 (C.D. Cal. May 30, 2018), the court denied summary judgment on a §496(c) claim but granted it on related fraud claims. There, defendant had stolen $4 million from his employer. He was convicted, was serving time in prison, and had been ordered to make restitution. Plaintiff then sued him for fraud, conversion and receiving stolen property and moved for summary judgment. Defendant offered to stipulate to judgment for the fraud damages but opposed summary judgment on the §496(c) claim. Following the reasoning of Grouse River, the court denied summary judgment on this claim because there was no "extra step" of withholding the stolen money after demand for its return as pointed out in Bell and Grouse River. Id. *5.

In AdTrader, Inc. v. Google LLC, No. 17-cv-07082, 2018 WL 3428525, *9 (N.D. Cal. July 13, 2018), the court granted a motion to dismiss a §496(c) claim without leave to amend. The court found that the theft based on fraud in Bell was wholly different from the fraud alleged in this case. In Bell, the loan transaction itself was fraudulent. Here, there was no allegation that

-16-

1  the initial transaction was fraudulent, only that the defendant's refund policy was fraudulent.  Id.

2  Thus, plaintiff could not plausibly allege that defendant received stolen property.

3       These state and federal cases disclose a reluctance to use the Bell approach in

4  commercial contract disputes in which a fraud claim is premised on the same core facts

5  underlying a breach of contract claim.  The present case obviously differs in that Ms.

6  Markushevska admittedly committed theft within the definition of Penal Code §484 and this

7  theft did not arise in a commercial context.  In addition, Penal Code §496(a) states that a

8  principal in a theft may be convicted under §496(a).  However, the court is persuaded that the

9  approach taken by the district court in Grouse River Outfitters and its interpretation of the dual-

10 liability concept is appropriate in the context of this case.  As the court explained there -

11       [I]n Bell, the defendant had engaged in additional conduct beyond the underlying theft.
         The apparently decisive ground for permitting a §496(c) claim in Bell was that the
12       defendant had violated §496(a) not only by receiving property from Bell by false
         pretense, but also by withholding that property when she asked for it back.  That small
13       additional conduct was enough, in Bell's view, to avoid §496(a)'s dual-liability bar.  For
         purposes of this case, it is enough to notice that there is no similar "extra conduct" here.
14
   Grouse River Outfitters, Ltd., 2016 Wl 5930273, at *15 (internal citations omitted).
15
        The same is true here as to this sort of "extra conduct."  There was no evidence at trial
16
   which would support a finding that Defendants - either alone or together - took any extra steps to
17
   conceal or withhold the stolen funds once the Embezzlement came to light.  The record in
18
   Defendants' chapter 13 case also shows that once Allure discovered the Embezzlement and sued
19
   Defendants in state court, Defendants' attorney promptly notified Allure that Defendants did not
20
   oppose issuance of an injunction and began serious efforts to settle the case by offering to repay
21
   Allure and by trying to resolve the case in a way that would have minimized attorney's fees for
22
   both sides.  See Declaration of Louis J. Willett, Main Case Docket No. 23.  This Declaration
23
   explains these efforts and the settlement offers made to Allure - all of which were rebuffed.  The
24
   Defendants' chapter 13 plan also shows a reasonable effort to repay Allure in a way that would,
25
   if the plan were confirmed and performed, achieve a compensatory measure of damages.  Unlike
26
   the defendant in Bell, Defendants here made serious efforts to compensate Allure once Allure
27
   filed suit.
28

                                              -17-

1    In Cohen v. de la Cruz, 523 U.S. 213 (1998), the Supreme Court held that the

2    nondischargeable debt in a §523(a)(2)(A) case included the treble damages provided by the New

3    Jersey Consumer Fraud Act that the trial court found applicable to the debtor's conduct.  The

4    Supreme Court rejected the debtor's argument that Bankruptcy Code §523(a)(2)(A) only allowed

5    a restitutionary measure of damages rather than a compensatory one.  Because the court finds

6    that the record here does not support application of Penal Code §496(c), awarding treble

7    damages is not appropriate and, unlike Cohen, the amount of Allure's nondischargeable debt

8    does not include them.  Allure is entitled to compensatory damages only.

9        In its post-trial brief, Allure cites a number of cases from outside the Ninth Circuit for the

10   proposition that other state's statutes providing for treble damages have been used in establishing

11   damages in nondischargeability cases and this court should follow suit.  See In re Krupka, 317

12   B.R. 432 (Bankr. D. Colo. 2004) (Colorado statute, ch. 13 debt limits under Bankruptcy Code

13   §109(e)); In re Chong, 523 B.R. 236 (Bankr. D. Colo. 2014) (Colorado statute); In re Dixon, 535

14   B.R. 450 (Bankr. N.D. Ga. 2015) (Michigan statute); In re Mud King Prod., Inc., 514 B.R. 496

15   (Bankr. S.D. Tex. 2014) (Texas statute).  None of these cases are binding authority.  Taken as

16   illustrative, the court is not persuaded that the reasoning in these cases dictates the appropriate

17   result here.[13]

18       After careful review of the above authorities, the court concludes that in the context of

19   this case, awarding treble damages is not appropriate.  While Ms. Markushevska admittedly stole

20   money from Allure, unlike the defendant in Bell, she took no extra steps to retain it.  Mr. Aviles

21   established that he did not know of the Embezzlement and Allure failed to prove by a

22   preponderance of the evidence that he knowingly received stolen property, aided in the theft, or

23   was reckless in failing to discern it.

24       **E.  Marlon Aviles' Liability**

25

26       [13] Allure did not cite In re Dorland, 374 B.R. 765 (Bankr. D. Colo. 2007) which discusses
27   In re Krupka (and another decision by the judge who decided Krupka).  Dorland concludes the
     court has discretion in deciding whether or not to apply the same Colorado statute providing for
28   treble damages.  Id. at 780.

-18-

1    Allure contends that Mr. Aviles is liable without any analysis other than a cursory

2    argument that he knew what Ms. Markushevska was doing, he acted in concert with her because

3    the embezzled money was deposited into the Joint Account, and he was aware of how at least

4    some of the money was being spent.

5           In La Trattoria, Inc. v. Lansford (In re Lansford), 822 F.2d 902, 904-05 (9th Cir. 1987),

6    the Ninth Circuit explained that where the evidence showed the debtor-wife participated with the

7    debtor-husband in creating a fraudulent financial statement on which the creditor relied, the debt

8    was nondischargeable as to both spouses under §523(a)(2)(B).  In Tsurukawa v. Nikon Precision,

9    Inc. (In re Tsurukawa) (Tsurukawa I), 258 B.R. 192 (9th Cir. BAP 2001) and in Tsurukawa v.

10   Nikon Precision, Inc. (In re Tsurukawa) (Tsurukawa II), 287 B.R. 515 (9th Cir. BAP 2002) the

11   Ninth Circuit Bankruptcy Appellate Panel dealt with the vicarious liability of a spouse for

12   purposes of Bankruptcy Code §523(a)(2)(A).  These cases teach that a marriage relationship

13   itself is not a sufficient basis for imputing the fraud of one spouse to the other spouse for

14   dischargeability purposes.  Instead, fraud may be imputed to a spouse under agency/partnership

15   principles.

16          Under applicable California law, a partnership is an association of two or more persons to

17   carry on as co-owners a business for profit.  Cal. Corp. Code §16101(7).  A general partner's

18   liability is the same as that of a principal for the fraud of his agent acting in the scope of his

19   authority.  See Pearson v. Norton, 230 Cal.App.2d 1, 14-15 (1964) (partner-wife liable for

20   partner-husband's fraud).  Where there is a partnership or agency relationship, it is not necessary

21   to prove the innocent debtor knew of the fraudulent conduct for imputed liability purposes.  See

22   also Haig v. Shart (In re Shart), 2013 WL 1397401, *7 (9th Cir. BAP April 2, 2013)

23   (summarizing holdings of Tsurukawa I and Tsurukawa II); Haig v. Shart (In re Shart), 2014 WL

24   6480307, *12 (9th Cir. BAP Nov. 19, 2014) (same).

25          There was no suggestion, let alone proof, that Defendants had any sort of business that

26   would fit the definition of a partnership under California law.  To the contrary, the evidence

27   showed only that each Defendant was employed and was paid a salary that was directly

28   deposited into their respective separate accounts.  Accordingly, the question here is whether Mr.

-19-

1  Aviles knew of the Embezzlement, actively participated in it, aided her commission of it, or was

2  reckless in failing to understand the Embezzlement was taking place.

3        At trial, Mr. Aviles established with credible testimony that he did not know that Ms.

4  Markushevska was stealing from Allure and depositing the stolen funds into the Joint Account.

5  He testified that he did not access it to review it on a monthly basis, did not withdraw funds from

6  it on a routine basis, and on only one occasion were funds transferred to the Aviles Separate

7  Account from the Joint Account.  While a version of his name - "M. Aviles" - appears as the

8  payee on the checks, the difference in the signatures on his own checks and the "M.Aviles"

9  signature written on the fraudulent checks supports a finding that he did not write on the

10  fraudulent checks.  And Allure failed to prove that he acted in any way other than as he

11  described.  Thus, there are no facts from which to draw any contrary inferences.

12        In addition, to the extent the record includes such information, it appears the Defendants

13  continued to live as they had before Ms. Markushevska began the Embezzlement.  Other than the

14  purchase of the used BMW and the modest home improvements, their lifestyle did not change in

15  any dramatic or ostentatious way.  In short, the court found credible Mr. Aviles' testimony that

16  he did not knowMs. Markushevska was embezzling from Allure until Allure sued the

17  Defendants in state court.

18        As Defendants acknowledged at trial, Allure's debt is dischargeable as to Mr. Aviles's

19  except as provided in Bankruptcy Code §541 and §524(a)(3).  This warrants a brief explanation.

20        Bankruptcy Code §524(a)(3) provides in relevant part:

21        (a) A discharge in a case under this title -

22             (3) operates as an injunction against the commencement or continuation of an
               action, the employment of process, or an act, to collect or recover from, or offset
23             against, property of the debtor of the kind specified in section 541(a)(2) of this
               title that is acquired after the commencement of the case, on account of any
24             allowable *community claim*, except a community claim that is excepted from
               discharge under section 523.
25  Bankruptcy Code §524(a)(3) (emphasis added).

26
          Bankruptcy Code §101(7) defines a "community claim" as a claim that arose before the
27
     commencement of the case for which property of the kind specified in §541(a)(2) is liable,
28

-20-

1    whether or not there is any such property at the time of the commencement of the case.  Whether

2    a claim is a community claim is a question of state law.  See FDIC v. Soderling (In re Soderling),

3    998 F.2d 730, 733 (9th Cir. 1998) (applying California law, explaining all claims against a

4    marital community are discharged except a community claim that is excepted from discharge

5    under §523).  A community creditor is any creditor that can satisfy any part of its claim from

6    community property.  Id.

7         Allure's claim is, by definition, a community claim and it may be satisfied, post-

8    bankruptcy, from community assets to the extent it is not fully paid during the life of the

9    Defendants' chapter 13 case - assuming the plan in its current iteration is confirmed and

10   performed.  However, to the extent it exists, Allure may not reach Mr. Aviles' separate property

11   to satisfy its nondischargeable claim.

12        **F. The Amount of Allure's Debt and its Allowed Claim**

13        Pursuant to Bankruptcy Code §523(a)(4) and §523(a)(6), Allure's nondischargeable debt

14   consists of the $137,059.10 embezzled by Ms. Markushevska, plus the $11,000 Allure expended

15   researching the theft and reconstructing its books and records, plus prejudgment interest.

16        In its post-trial brief, Allure requested prejudgment interest based on California Civil

17   Code §3287.  That provision is not applicable here.  For federal claims for relief such as the

18   §523(a)(4) and (a)(6) claims involved here, the determination of prejudgment interest is

19   governed by federal law which leaves it to the sound discretion of the trial court.  Sunclipse, Inc.

20   v. Butcher (In re Butcher), 200 B.R. 675, 680-81 (Bankr. C.D. Cal. 1996), *aff'd* 226 B.R. 283

21   (9th Cir. BAP 1998).

22        The postjudgment interest rate under 28 U.S.C. §1961 may be an appropriate rate to use

23   for prejudgment interest unless the equities of the case require a different rate.  Grosz-Salomon

24   v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1164 (9th Cir. 2001).  Based on the egregiousness

25   of Ms. Markushevska's actions, the court finds that the equities of this case allow it to employ

26   the California rate of 10% provided in California Code of Civil Procedure §685.010 rather than

27   the lower federal rate.  Because the Embezzlement took place over roughly a twelve month

28   period, the court will use the date that is thirty days before Allure sued Defendants in state court

-21-

1 | - August 15, 2015 - as the date of the loss for interest accrual purposes.

2 | Pursuant to Federal Rule of Bankruptcy Procedure 7054(b), the court has discretion as to

3 whether to award costs to a prevailing party in an adversary proceeding. Young v. Aviva Gelato,

4 Inc. (In re Aviva Gelato, Inc.), 94 B.R. 622 (9th Cir. BAP 1988). Allure is the prevailing party

5 as to the dischargeability of its debt. It is not the prevailing party on the Penal Code §496(c)

6 issue. Allure does not need to be completely successful to be deemed the prevailing party.

7 Thomas v. SS Santa Mercedes, 572 F.2d 1331, 1335 (9th Cir. 1978). Even if it is considered to

8 be the prevailing party, the court retains discretion to deny costs. After review of the docket in

9 the main case and in this adversary proceeding, the court exercises its discretion to deny Allure

10 its costs. The court reaches this conclusion because the record shows that Allure unnecessarily

11 prolonged this litigation and unnecessarily delayed confirmation of the Defendants' chapter 13

12 plan apparently because it assumed it was entitled to treble damages.

**IV. Conclusion**

As explained above, Allure's debt is nondischargeable under Bankruptcy Code

§523(a)(4) and (a)(6) as to Ms. Markushevska. Allure's debt is dischargeable as to Mr. Aviles

except as provided in Bankruptcy Code §524(a)(3).

Allure shall submit a proposed judgment in accordance with this decision which shows

its calculation of prejudgment interest. If Defendants wish to proceed to confirmation of their

plan, they shall restore their plan to the court's chapter 13 confirmation calendar.

\* \* \* \* End of Memorandum Decision \* \* \* \*

-22-

Court Service List

None

-23-